# UNITED STATES DISTRICT COURT

# DISTRICT OF NEW MEXICO

HILDA L. SOLIS, Secretary of Labor,
United States Department of Labor,

       Plaintiff,

vs.                                     Civ. No. 07-01289 MV/LFG

A TOUCH OF GLASS ENTERPRISES, INC.,
EMILY GORDON, individually, and
EMERALD DUQUETTE, individually,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff's Second Motion for Summary

Judgment, filed June 1, 2009 **[Doc. No. 56]**.  No response to the motion was filed.  The Court,

having considered the motion, brief, relevant law and being otherwise fully informed, finds that

part of Plaintiff's motion is well-taken, while part is not well-taken, and accordingly Plaintiff's

motion will be **GRANTED in part** and **DENIED in part**.

## HISTORY OF DISPUTE

On approximately June 30, 2005, the United States Department of Labor, Employment

Standards Administration, Wage and Hour Division ("Wage and Hour") initiated an

investigation of A Touch of Glass Enterprises, Inc. ("Touch of Glass").  Based upon evidence

obtained during the investigation, Wage and Hour determined that Touch of Glass had violated

the overtime, minimum wage, and record-keeping provisions of the Fair Labor Standards Act

("FLSA"), 29 U.S.C. §§ 206, 207, 211(c), 215(a)(2), and 215(a)(5) **[Doc. No. 56, Ex. 1]**.

Accordingly, on December 21, 2007, Plaintiff filed this action seeking to enjoin Defendants

Touch of Glass, its President Emily Gordon, and its Vice President Emerald Duquette from violating the provisions of the FLSA and to restrain Defendants from withholding payment of minimum wages and/or overtime compensation found by the Court to be due employees under the Act, and seeking an equal amount as liquidated damages due to the employees named in Exhibit A to the complaint **[Doc. No. 1]**.  The complaint was amended twice to revise the list of affected employees named in Exhibit A **[Doc. Nos. 20-2 & 51]**.

While Defendants filed answers to the original and first amended complaints **[Doc. Nos. 9 & 21]**, Defendants never answered the second amended complaint, which was filed on March 31, 2009.  Instead, in late 2008, after Touch of Glass ceased doing business, Defendants absented themselves from this litigation.  Accordingly, on December 12, 2008, Defendants' counsel filed a motion to withdraw as counsel **[Doc. No. 34]** and, on March 31, 2009, this Court granted the motion to withdraw and stayed the litigation for 30 days so that Defendants could obtain new counsel **[Doc. No. 49]**.  Defendants failed to obtain new counsel and have made no subsequent appearances in this litigation.

On June 1, 2009, Plaintiff filed the instant motion for summary judgment.  As noted above, Defendants have filed no response to the motion.

## LEGAL STANDARD

While D.N.M.LR-Civ. 7.1(b) provides that the failure to file a response in opposition to a motion "constitutes consent to grant the motion," the United States Court of Appeals for the Tenth Circuit has held that in the context of a motion for summary judgment:

> [A] party's failure to file a response to a summary judgment motion is not, by itself, a sufficient basis on which to enter judgment against the party.  The district court must make the additional determination that judgment for the moving party is "appropriate" under Rule 56.  Summary judgment is appropriate only if the

> moving party demonstrates that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law.  By failing to file a response within the time specified by the local rule, the nonmoving party waives the right to respond or to controvert the facts asserted in the summary judgment motion.  The court should accept as true all material facts asserted and properly supported in the summary judgment motion.  But only if those facts entitle the moving party to judgment as a matter of law should the court grant summary judgment.

*Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002).

## DISCUSSION

This Court will first address the applicability of the FLSA and specifically whether each Defendant is liable as an "employer" for violations of the FLSA.  It will then address whether Plaintiff is entitled to summary judgment that Defendants violated the overtime, minimum wage, and record-keeping provisions of the FLSA.  Next, the Court will address whether Plaintiff has established that she is entitled to summary judgment that Defendants' violations were willful (thus enlarging the applicable statute of limitations period).  Finally, the Court will address the relief sought by Plaintiff.

## I.    The Applicability of the FLSA

In their answers to Plaintiff's original and first amended complaints, Defendants admit that Touch of Glass was at all relevant times an enterprise within the meaning of section 3(r) of the FLSA, 29 U.S.C. § 203(r), in that Touch of Glass has been, through unified operation or common control, engaged in the performance of related activities for a common business purpose **[Doc. No. 1 at Section III; Doc. No. 9 at ¶ 5; Doc. No. 20-2 at Section III; Doc. No. 21 at ¶ 5]**.  Defendants likewise admit that Touch of Glass was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1)(A) of the FLSA, 29 U.S.C. § 203(s)(1)(A), in that it had employees engaged in commerce or in the

production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that had been moved in or produced for commerce by any person and in that it has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated) **[Doc. No. 1 at Section IV; Doc. No. 9 at ¶ 6; Doc. No. 20-2 at Section IV; Doc. No. 21 at ¶ 6]**.

While Defendants do not dispute that Touch of Glass is an employer and a proper party to this litigation, in their answers to the original and first amended complaints, Defendants contend that neither Emily Gordon nor Emerald Duquette are employers within the meaning of the FLSA and therefore cannot be liable for Touch of Glass's alleged violations of the FLSA **[Doc. No. 9 at ¶¶ 3-5 & B-C; Doc. No. 21 at ¶¶ 3-5 & B-C]**.

The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  The Supreme Court has recognized that the FLSA's definition of employer is "expansive."  *Falk v. Brennan*, 414 U.S. 190, 195 (1973).  Whether a party is an employer within the meaning of the FLSA is a question of law and is determined by examining the "economic realities" of the relationship.  *Fegley v. Higgins*, 19 F.3d 1126, 1131 (6th Cir. 1994); *cf. Baker v. Flint Eng'g & Constr. Co.*, 137 F.3d 1436, 1440 (10th Cir. 1998) (applying economic reality test to determine whether individual was an "employee" covered by the FLSA or an independent contractor).   With respect to individual corporate officers,"[t]he overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages."  *Donovan v. Agnew*, 712 F.2d 1509, 1511, 1514 (1st Cir. 1983) (gathering cases and holding that appellants—

4

corporate officers who had substantial ownership interest in the corporation and operational control of significant aspects of the corporation's day-to-day functions, including employee compensation, and who personally made decisions to continue operations despite financial adversity during the period of nonpayment—were personally liable as employers under the FLSA for the failure to pay minimum and overtime wages); *see also Herman v. PSR Sec. Servs. Ltd.*, 172 F.3d 132, 136-37, 139-41 (2d Cir. 1999) (holding chairman of board and 50% shareholder was an "employer" subject to liability under the FLSA where evidence showed *inter alia* that he had the authority to hire employees, he occasionally supervised and controlled employee work schedules and conditions of employment, he had the authority to sign paychecks, he had direct involvement with the relevant company operations from time to time and was generally involved with all of the company's operations, and he controlled the company financially and exercised authority over top company officials); *Fegley*, 19 F.3d at 1131 (CEO with significant ownership interest in business and who controlled significant functions of the business and determined salaries and made hiring decisions was personally liable as an "employer" under the FLSA); *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 965-66 (6th Cir. 1991) (chief corporate officer and "top man" with significant ownership interest in corporation and who controlled significant aspects of its day-to-day functions, including determining employee salaries, was personally liable as an "employer" under the FLSA); *Reich v. Circle C Invs., Inc.*, 998 F.2d 324, 329 (5th Cir. 1993) (affirming determination that individual was "employer" under the FLSA, though he did not have an ownership interest or control day-to-day operations, where trial testimony showed *inter alia* that he exercised control over the work situation, was the driving force behind the company, had involvement in hiring and supervision,

had signed payroll checks and removed money from safes, and had ordered an employee to refrain from keeping records of tip-outs); *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 972 (5th Cir. 1984) (affirming individual's status as employer where, among other things, the individual began and controlled the corporations, held their purse strings and guided their policies, was the only person who could authorize compliance with the FLSA, and where the corporations, pragmatically speaking, were his and functioned for the profit of his family).

This Court finds that Plaintiff is entitled to summary judgment that Emily Gordon is an "employer" within the meaning of the FLSA, jointly and severally liable with Touch of Glass for any violations of the FLSA.  The evidence Plaintiff submitted in support of her summary judgment motion, which was not refuted by Defendants, establishes that Ms. Gordon was the President, Director, Chief Executive Officer, General Manager, and Registered Agent of Touch of Glass; that she was the sole owner of Touch of Glass; that she actively managed, supervised, and directed the business affairs and operations of Touch of Glass, as well as acted, directly and indirectly, in the interest of Touch of Glass in relation to its employees; that she was actively involved in the day-to-day operations of the company; that she helped managers make hiring decisions; that she set rates of pay for employees and decided which employees would receive raises; that she was involved in reviewing employee time cards and oversaw the company's accounting practices; that she was responsible for payroll, including determining how much employees were paid during each workweek; and that she was responsible for deciding whether employees were treated by Touch of Glass as exempt from the overtime pay requirements of the FLSA **[Doc. No. 1 at Section II ¶ 2; Doc. No. 9 at ¶ 3; Doc. No. 20-2 at Section II ¶ 2; Doc. No. 21 at ¶ 3; Doc. No. 56, Ex. 3 at Request Nos. 14-15; Doc. No. 56, Ex. 4, Vol. I at 24:5-**

**27:6, 57:4-59:9, 60:19-25, 65:1-66:6, 66:19-67:16, 90:11-14; Doc. No. 56, Ex. 5 at 4:21-23**].
This evidence establishes that Ms. Gordon was, as a matter of law, an "employer" within the
meaning of the FLSA.

In contrast to Ms. Gordon, this Court finds that there are material questions of fact as to
whether Emerald Duquette is an "employer" within the meaning of the FLSA.  Plaintiff has
submitted evidence that Ms. Duquette held the titles Vice President and Director of Touch of
Glass and Ms. Duquette admits that she actively managed, supervised and directed the business
affairs and operations of Touch of Glass and acted, directly and indirectly, in the interest of
Touch of Glass in relation to its employees and that, since June of 2006, she was actively
involved in payroll issues, setting work schedules, and making hiring decisions **[Doc. No. 1 at
Section II ¶ 3; Doc. No. 9 at ¶ 4; Doc. No. 20-2 at Section II ¶ 3; Doc. No. 21 at ¶ 4; Doc.
No. 56, Ex. 3 at Request No. 16**].  Plaintiff has also submitted evidence from two employees
who testified that they understood that Ms. Duquette was responsible for payroll and that they
viewed her as a supervisor or boss; one of the two employees further described her as "Emily's
right-hand man" and testified that Ms. Duquette was responsible for setting work schedules
**[Doc. No. 56, Ex. 6 at 27:1-28:18, 31:14-17, 44:1-11, 45:16-49:20; Doc. No. 56, Ex. 7 at
44:13-45:7**].  However, Plaintiff has also submitted evidence that would show Ms. Duquette's
role was far more limited than her title would suggest.  For example, Ms. Gordon, as Touch of
Glass's 30(b)(6) designee, testified:

Q.  Who are the current officers and directors of A Touch of Glass?

A.  I am the owner, the sole owner.  I own 100 percent of the business.

Q.  Have you always owned 100 percent of the business?

A.  Yes, I have.  I did list my daughter, Emerald Duquette, on paper, that she would be vice president in my absence.  She could make decisions when I was absent.  But I was always there.

Q.  When you say you listed her on paper, what paper did you list her as vice president?

A.  When you file the corporate paperwork, I listed her there.

* * * *

Q.  Is she a director or have any other titles within A Touch of Glass?

A.  No.  She's just an office clerk, clerical.

Q.  Why was she listed as vice president if she's only clerical?

A.  I probably made that mistake.  I was thinking of listing her in case I was not there; in my absence she had authority to make some decisions and things like that.  But she really didn't have to make any decisions or anything because I was always there.

**[Doc. No. 56, Ex. 4, Vol. I at 24:5-25:22]**.  Ms. Gordon further testified that she, rather than Ms. Duquette, was responsible for determining how much employees were paid for any particular week, explaining:  "I would put the payroll together, and I would have Emerald enter it into the computer, but I would sit with her" **[Doc. No. 56, Ex. 4, Vol. I at 60:19-25]**. Accordingly, this Court finds that based on the present evidentiary record, Plaintiff is not entitled to judgment as a matter of law that Ms. Duquette is an "employer" within the meaning of the FLSA.

## II.    Violation of the Overtime Pay Requirements of the FLSA

Under section 7 of the FLSA, employers are required to pay covered employees one and one-half times their "regular" rate of pay for each hour worked in excess of 40 during any given workweek.  29 U.S.C. § 207(a)(1).  However, employees who are "employed in a bona fide

8

executive, administrative, or professional capacity" are exempt from the overtime pay requirement set forth in section 7 of the FLSA.  29 U.S.C. § 213(a)(1).

Defendants claim that approximately 22 of the employees listed in Exhibit A to the Second Amended Complaint are exempt from the FLSA's overtime pay requirement pursuant to the executive exemption **[Doc. No. 56, Ex. 4, Vol. I at 92:11-93:2, 94:10-18; Doc. No. 56, Ex. 4, Vol. II at 5:9-7:20]**.  However, it is Defendants' burden to prove that an employee is exempt under the FLSA.  *See Archuleta v. Wal-Mart Stores, Inc.*, 543 F.3d 1226, 1233 (10th Cir. 2008) (citing *Chessin v. Keystone Resort Mgmt., Inc.*, 184 F.3d 1188, 1192 (10th Cir. 1999)).  Moreover, the Tenth Circuit has explained:  "Exemptions to the FLSA are to be narrowly construed; the employer must show that the employee fits plainly and unmistakenly with the exemption's terms" and must do so with "'clear and affirmative' evidence."  *Archuleta*, 543 F.3d at 1233 (quoting *Aaron v. City of Wichita*, 54 F.3d 652, 657 (10th Cir. 1995)).  Defendants, who filed no opposition to Plaintiff's summary judgment motion, have not met their burden of showing the 22 identified employees are exempt.

Moreover, Plaintiff has submitted evidence establishing that the executive exemption is inapplicable.  The FLSA's implementing regulations define "employee employed in a bona fide executive capacity" as:

> any employee:  (1) Compensated on a ***salary basis*** at a rate of not less than $455 per week . . . exclusive of board, lodging or other facilities; (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision therefore; (3) Who customarily and regularly directs the work of two or more other employees; and (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100 (emphasis added).

An employee is compensated on a "salary basis"—as required for the first element of the exemption test—if the employee:

> regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed. . . . [A]n exempt employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked.

29 C.F.R. § 541.602(a).

Plaintiff submitted deposition testimony establishing that allegedly exempt Touch of Glass employees were not paid on a "salary basis" as they were subject to pay reductions or required to make up time if they worked fewer than 40 hours in a workweek. For example, Ms. Gordon, as Touch of Glass's 30(b)(6) designee, testified that when the allegedly exempt employees worked fewer than 40 hours in a workweek, they had to request to receive their full pay for that workweek and were required to "make up" the time **[Doc. No. 56, Ex. 4, Vol. II at 50:7-52:1]**. Allegedly exempt employee Rick Artiaga further confirmed that he was paid by the hour when he worked fewer than 40 hours in a workweek in that his pay was either docked or he was required to make up time, but that he was paid a set rate if he worked 40 or more hours in a workweek **[Doc. No. 56, Ex. 8 at 19:18-20:5, 21:4-23:5]**. Allegedly exempt employee Eli Herrera likewise testified that he was paid by the hour when he worked less than 40 hours in a week **[Doc. No. 56, Ex. 9 at 49:1-20]**. Additionally, Plaintiff submitted examples of payroll records reflecting Touch of Glass's practice of reducing the pay of allegedly exempt employees where the employee failed to work 40 hours in a workweek **[Doc. No. 56, Ex. 2 at ¶ 7 & Ex. A; Doc. No. 56, Ex. 4, Vol. II at 52:2-8, 52:15-55:17 & excerpts from Depo. Exs. 12 & 18 (time cards and corresponding payroll summaries for Clyde Miller and Rick Artiaga)]**.

10

In addition to not paying allegedly exempt employees on a salary basis, Defendants' payroll records further establish that at least nine of the allegedly exempt employees were not paid at the required rate of at least $455 per week during some or all of the relevant period **[Doc. No. 56, Vol. II at 47:11-48:18 & excerpts from Depo. Exs. 17, 18 & 19 (payroll summaries for allegedly exempt employees Jordon Affholter, Verlaine Barela, Patrick Cork, Brandy Dill, Monica Gallegos, Erik Lawrence, Denise Salazar, Amanda Santistevan, and Gerald Stratton)]**.  Accordingly, this Court finds that Defendants have not met, and cannot meet, their burden of establishing that the executive exemption applies.

Defendants acknowledge that they did not pay overtime to the 22 allegedly exempt employees **[Doc. No. 56, Ex. 4, Vol. II at 50:7-52:1]**.  Additionally, Defendants' payroll records reflect other instances where Defendants did not pay other employees for overtime work at the required rate of one and one-half times the employee's regular rate of pay **[Doc. No. 56, Ex. 2 at ¶ 8 & Ex. B]**.  Accordingly, this Court finds that Plaintiff is entitled to summary judgment that Touch of Glass and Ms. Gordon are liable for violating 29 U.S.C. § 207.

### III.   Violation of the Minimum Wage Requirements of the FLSA

This Court likewise finds that Plaintiff is entitled to summary judgment against Touch of Glass and Ms. Gordon as to her claim that they violated the minimum wage requirements of the FLSA.  Section 6 of the FLSA requires employers to pay an employee no less than the federal minimum wage.  29 U.S.C. § 206.  From December 2004 through July 23, 2007, the federal minimum wage was $5.15, and from July 24, 2007 to July 24, 2008, the federal minimum wage was $5.85.

It is well-established that the minimum wage must be paid to employees fully and unconditionally.  The minimum wage requirements of the FLSA are not met where the employee "kicks back" to the employer all or part of the employee's wage.  29 C.F.R. § 531.35.  "For example, if it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the Act in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act."  *Id.*; *see also Brennan v. Vetrans Cleaning Serv., Inc.*, 482 F.2d 1362, 1369-70 (5th Cir. 1973) (deductions from employee's paycheck to repay employer for damage to employer's vehicle violated the FLSA where they reduced employee's net wage below the statutory minimum); *Mayhue's Super Liquor Stores, Inc. v. Hodgson*, 464 F.2d 1196, 1197-99 (5th Cir. 1972) (voluntary agreement that employee would repay cash register shortages violated the FLSA to the extent required payments reduced employee's compensation below minimum wage).

Additionally, the cost of furnishing "facilities"—such as uniforms and tools—that are primarily for the benefit or convenience of the employer are not considered "wages" for purposes of the FLSA.  29 C.F.R. § 531.3(d)(1) & (d)(2); 29 C.F.R. § 531.32(c).  Therefore, charges for the rental of a uniform may not be considered wages for the purpose of determining whether the minimum wage requirements are met where the nature of the business requires the employee to wear a uniform.  29 C.F.R. § 531.3(d)(2); 29 C.F.R. § 531.32(c); *see also Reich v. Priba Corp.*, 890 F. Supp. 586, 596-97 (N.D. Tex. 1995) (FLSA violated where employer required employees to provide their own uniforms, the expense of which reduced employees'

wages below the minimum wage prescribed by the FLSA).

Defendants made deductions from employees' pay for uniform expenses, tool purchases, and damage to vehicles **[Doc. No. 56, Ex. 4, Vol . II at 62:11-64:15, Doc. No. 56, Ex. 8 at 24:14-25:14]**.  In certain instances, these deductions resulted in employees receiving less than the required minimum wage and were thus in violation of the FLSA **[Doc. No. 56, Ex. 2 at ¶ 10 & Ex. D]**.  Accordingly, this Court finds that Plaintiff is entitled to summary judgment that Touch of Glass and Ms. Gordon are liable for violating 29 U.S.C. § 206.

## IV.  Violation of the Record-Keeping Requirements of the FLSA

The FLSA requires an employer to "make, keep, and preserve" records of wages, hours and "other conditions and practices of employment maintained by him."  29 U.S.C. § 211(c).  The burden is on the employer to assure the accuracy of its wage and time records.  *Dole v. Solid Waste Serv., Inc.*, 733 F. Supp. 895, 924 (E.D. Pa. 1989), *aff'd,* 897 F.2d 521 (3d Cir. 1990).  Among other things, federal regulations require that the information maintained include hours worked per day and week, total daily or weekly straight-time earnings, and total premium pay for overtime hours.  29 C.F.R. § 516.2(a)(7)-(9).

Defendants violated the record-keeping requirements of the FLSA by manually altering time cards to reflect that employees worked fewer hours and by indicating on time and payroll records that certain employees worked only 40 hours in a week, when the employees actually worked more than 40 hours.  There is also evidence that Defendants made inaccurate handwritten adjustments to employee time cards to deduct time for lunches not taken.  For example, JoNell Maxon Stanesic, who Defendants identified as a manager, testified that she normally did not take lunch and when she did, she would clock out and clock back in upon her

return **[Doc. No. 56, Ex. 6 at 21:9-24, 23:24-25, 30:3-15]**.  She further testified that handwritten notations on her time cards (which she did not make) incorrectly indicate that she took lunch breaks on days she did not go to lunch; additionally, she testified that there were other handwritten alterations to her time cards (which she again did not make) that had the effect of inaccurately reducing the number of hours listed on the time cards such that the altered time cards reflected that she worked fewer hours than she actually worked **[Doc. No. 56, Ex. 6 at 29:4-32:11, 33:21-40:13 & excerpts from Depo. Exs. 11 & 12]**.  According to her testimony, the inaccurate handwritten notations were not on her time cards when they were sent to Touch of Glass's corporate office and no one from the corporate office ever called her to clarify whether she had taken lunch on a particular day or to clarify the times she worked **[*Id.*]**.

Similarly, Eli Herrera, who Defendants identified as a manager/installer, testified that handwritten notations on his time cards (which he did not make and which were not present when the time cards were sent to Touch of Glass's corporate office) inaccurately reflected that he took lunches on days he did not **[Doc. No. 56, Ex. 9 at 52:13-56:4]**.  As was the case with Ms. Stanesic, Mr. Herrera testified that no one from the corporate office ever called him for clarification regarding whether he or other employees at his location had taken lunches on a particular day **[*Id.*; *see also* Doc. No. 56, Ex. 7 at 37:12-40:14 (employee Robert Giangola's testimony that handwritten notations on his time cards reflecting "1 hr lunch" were inaccurate and were not made by him); Doc. No. 56, Ex. 2 at ¶ 9 & Ex. C (investigator's findings); Doc. No. 56, Ex. 4, Vol. II at excerpts from Depo. Ex. 12 (time card for Andres Carrillo)]**.

Accordingly, this Court finds that Plaintiff is entitled to summary judgment that Touch of Glass and Ms. Gordon are liable for violating 29 U.S.C. § 211(c), as they inaccurately altered time records to reduce the hours reflected by those records.

**V.   Whether Defendants' Violations Were Willful**

There is a two-year statute of limitations for violations of the FLSA except when a cause of action arises out of a willful violation, in which case a three-year statute of limitations applies. 29 U.S.C. § 255(a).  In order to establish that a violation is willful, the plaintiff must show either that the defendant knew its conduct violated the FLSA or showed reckless disregard for the matter of whether its conduct violated the FLSA.  *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988); *Reich v. Monfort, Inc.*, 144 F.3d 1329, 1334 (10th Cir. 1998).

In this case, the evidence Plaintiff submitted in support of her motion for summary judgment establishes that Touch of Glass's and Ms. Gordon's violations of the FLSA were willful.  First, in this case, Defendants recklessly took the position that employees who were not paid on a salary basis were exempt from the FLSA's overtime requirements.  In this regard, the instant case is similar to *Reich v. Waldbaum, Inc.*, 52 F.3d 35, 39-41 (2d Cir. 1995), in which the Second Circuit held that an employer's violation of the FLSA was willful where the employer had taken the position that employees who were paid on an hourly basis were exempt from the FLSA's overtime pay requirements pursuant to the executive exemption.  In *Waldbaum*, the employees were required to punch a time clock and received compensation according to the number of hours recorded; however, employee witnesses testified that they had worked hours, particularly overtime hours, for which they had not been paid.  *Id.* at 37.  The Second Circuit found that the law was clear at all relevant times that the executive exemption did not apply to

15

employees compensated on an hourly basis and that the employer acted recklessly in failing to apply the FLSA's overtime requirements to the employees. *Id.* at 41. Defendants' conduct here is arguably more culpable because, as discussed in Section II of this Order, Defendants treated the employees as hourly only when it was to Defendants' advantage to do so—i.e., during workweeks in which the employees worked fewer than 40 hours. When employees worked more than 40 hours in a workweek, Defendants treated them as "salaried."

Second, as discussed in Section IV of this Order, Defendants manually altered employee time cards to reflect that employees worked less time than they actually worked. This is further evidence that Defendants' violations were willful.

Third, there is evidence that Touch of Glass and Ms. Gordon were aware that state and federal labor laws imposed certain obligations on them with respect to minimum wages, overtime wages, and record-keeping, as the Touch of Glass "Employee Manual" included documents published by the New Mexico Department of Workforce Solutions that address various obligations employers have with respect to these issues **[Doc. No. 56, Ex. 4, Vol. II at 48:19-49:5 & excerpts from Depo. Ex. 9]**. Notably, these publications state that the only employees exempt from overtime pay are those "engaged in the ginning of cotton, agriculture, professional, administrative, executive and outside sales as determined by the Fair Labor Standards Act" **[*Id.*]**. Touch of Glass and Ms. Gordon were thus aware that the FLSA's provisions governed whether employees fell within the executive exemption. Additionally, the publications specifically list both state and federal minimum wage and provide: "No deduction can be made [from wages] except appropriate state, federal and social security taxes without a written authorization from the employee or a court order. In all cases, the employee must

16

receive the minimum wage" [*Id.*].  Despite Touch of Glass's and Ms. Gordon's awareness of the

requirement that employees must receive minimum wage, as discussed in Section III of this

Order, Defendants made deductions from employees' wages that resulted in employees receiving

less than the minimum wage.  *See Cunningham v. Gibson Elec. Co.*, 43 F. Supp. 2d 965, 977

(N.D. Ill. 1990) ("[W]hen . . . a company president has actual knowledge of the FLSA's

requirements and fails to comply, the company has acted willfully.").

     Finally, Plaintiff has submitted evidence that Defendants were not cooperative during the

Wage and Hour investigation.  Though Wage and Hour made repeated efforts to contact

Ms. Gordon, arrange a meeting with her, and obtain records from her during its investigation,

Ms. Gordon did not cooperate during the investigation, did not respond to the agency's

numerous efforts to arrange a meeting with her, and provided no records to the agency [**Doc. No.

56, Ex. 1**].  Such conduct further affirms the wilfulness of the alleged violations.  *See Martin v.

Deiriggi*, 985 F.2d 129, 136 (4th Cir. 1993) (affirming finding conduct was willful where, among

other things, employer destroyed some records and withheld others in order to impede the

investigation).

     Based on the foregoing, this Court finds that Plaintiff has established that Touch of Glass's

and Ms. Gordon's violations of the FLSA were willful.  Accordingly, this Court finds that the

three-year statute of limitations applies.

## VI.  The Appropriateness of Backwages, Liquidated Damages, and Injunctive Relief

     Plaintiff submitted the declaration of Theodore Trujillo, an investigator for Wage and Hour

[**Doc. No. 56, Ex. 2**].  Mr. Trujillo examined Touch of Glass time cards and payroll summaries

for the time period of December 21, 2004 (three years prior to the commencement of this suit) to

March 20, 2008 [**Doc. No. 56, Ex. 2 at ¶¶ 5-11**].  Using these time card and payroll summaries,

he prepared backwage calculations for each of the 48 employees listed in Exhibit A to the

Second Amended Complaint for the time period of December 21, 2004 to July 31, 2008 [**Doc.**

**No. 56, Ex. 2 at ¶¶ 11-15 & Ex. E**].  As Defendants did not provide time and payroll records for

the time period of March 21, 2008 to July 31, 2008, when Touch of Glass ceased business

operations, Mr. Trujillo estimated the backwages for this period by relying upon the time cards

and payroll summaries covering the period of December 20, 2007 to March 20, 2008, as these

were the most recent records available to him [**Doc. No. 56, Ex. 2 at ¶ 12**].  In his declaration,

Mr. Trujillo explained that where time cards were manually adjusted to reflect that employees

worked fewer hours than the employees originally recorded on their time cards, he relied on the

hours recorded by the employees [**Doc. No. 56, Ex. 2 at ¶ 11**].  Based on the above, Mr. Trujillo

calculated that the 48 Touch of Glass employees listed in Exhibit A to the Second Amended

Complaint are owed a total of $116,540.49 in backwages for the period of December 21, 2004

through July 31, 2008 [**Doc. No. 56, Ex. 2 at ¶¶ 13, 15 & Ex. E**].  Of this amount, $114,687.63

is due to employees based upon Defendants' violation of the FLSA's overtime pay requirements

[***Id.***].[1]  The remaining $1,852.86 is due to employees based upon Defendants' violation of the

FLSA's minimum wage requirements [***Id.***].  Accordingly, this Court finds that pursuant to

29 U.S.C. § 216(c), Touch of Glass and Ms. Gordon are liable for unpaid minimum wages and

---

[1]  Where an employee was paid nothing for hours worked exceeding 40 in a workweek
("overtime worked"), Mr. Trujillo calculated backwages at one and one-half times the
employee's hourly rate for all overtime worked [**Doc. No. 56, Ex. 2 at ¶ 11**].  Where, on the
other hand, Defendants paid an employee for overtime worked at less than one and one-half
times the employee's regular rate of pay, he credited the Defendants for the portion paid and
calculated backwages for the balance of overtime pay owed to the employee [***Id.***].

unpaid overtime compensation in the amount of $116,540.49.

Additionally, 29 U.S.C. § 216(c) provides for liquidated damages in an amount equal to the unpaid minimum wages and overtime compensation.  However, a court has the discretion to award no liquidated damages or to reduce the amount of liquidated damages awarded where an employer shows to the satisfaction of the court that it acted in good faith and had reasonable grounds for believing it was in compliance with the FLSA.  29 U.S.C. §260; *Dep't of Labor v. City of Sapulpa*, 30 F.3d 1285, 1289 (10th Cir. 1994).  It is the employer's burden to establish good faith and reasonable grounds for believing its actions did not violate the FLSA; if the employer fails to carry this burden, liquidated damages are mandatory.  *Local 246 Utility Workers Union of Am. v. So. Cal. Edison Co.*, 83 F.3d 292, 297-98 (9th Cir. 1996); *City of Sapulpa*, 30 F.3d at 1289; *Marshall v. Brunner*, 668 F.2d 748, 753 (3d Cir. 1982).  As previously noted, Defendants have filed no opposition to Plaintiff's summary judgment motion and thus no evidence to support a finding that they acted in good faith.  In contrast, as previously discussed in this Order, Plaintiff has submitted evidence to support a finding of willfulness, including evidence that Touch of Glass and Ms. Gordon were aware of minimum wage, overtime and record-keeping requirements yet failed to comply with the requirements; that they impeded Wage and Hour's investigation by failing to respond to requests for meetings and refusing to provide needed documents; that they treated certain employees as salaried only when it was in their benefit to do so (*i.e.,* when those employees worked more than 40 hours in a workweek); that they improperly altered employees' time cards by deducting time that was actually worked; and that they took deductions from employees' wages resulting in employees receiving less than minimum wage.  Accordingly, this Court finds that liquidated damages in the amount of

$116,540.49 should be awarded on summary judgment.

Finally, this Court finds that prospective injunctive relief is appropriate.  The FLSA authorizes injunctive relief pursuant to 29 U.S.C. § 217.  The question of whether an injunction should be granted is in the sound discretion of the Court; however, "[w]here there has been a clear violation of the statutes and regulations, . . . there should be assurances that the offending party will in the future voluntarily comply with the Act," otherwise an injunction should issue. *Wirtz v. Flame Coal Co.*, 321 F.2d 558, 560 (6th Cir. 1963); *see also McComb v. Wyandotte Furniture Co.*, 169 F.2d 766, 770 (8th Cir. 1948) (holding that even when an employer has discontinued violations of the FLSA, an injunction ordinarily should be granted unless the trial court is convinced that there is no reasonable probability of a recurrence of the acts).  Though Touch of Glass has ceased operations, there is no assurance that Ms. Gordon will not restart the company's operations.  As the evidence establishes she willfully violated the FLSA, and as Ms. Gordon showed an unwillingness to cooperate with the Wage and Hour investigation, this Court finds that an injunction permanently enjoining Touch of Glass and Ms. Gordon from further violations of the FLSA is appropriate.  *See, e.g., Flame Coal Co.*, 321 F.2d at 561-62 (district court erred in not granting injunction where, though defendants had ceased operating and their equipment was heavily mortgaged, there was nothing to prevent them from resuming operations and no affirmative indication they would not).

## CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff's Second Motion for Summary Judgment **[Doc. No. 56]** is **GRANTED in part** and **DENIED in part** as follows:

1.   Summary judgment is entered against A Touch of Glass Enterprises, Inc. and Emily Gordon for violations of 29 U.S.C. §§ 206, 207, 211(c), 215(a)(2), and 215(a)(5). A Touch of Glass Enterprises, Inc. and Emily Gordon are liable for backwages in the amount of $116,540.49 and an equal amount in liquidated damages pursuant to 29 U.S.C. § 216(c), for a total award of $233,080.98. Further, A Touch of Glass Enterprises, Inc. and Emily Gordon are hereby permanently enjoined from engaging in future conduct that would violate the overtime, minimum wage or record keeping provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 206, 207, 211(c), 215(a)(2), and 215(a)(5).

2.   Summary judgment is denied as to the claims against Emerald Duquette, as there are material issues of fact as to whether Ms. Duquette is an "employer" as that term is defined by the FLSA.

DATED this 23rd day of March, 2010.

_____

**MARTHA VAZQUEZ**
**Chief United States District Judge**